Dale S. **BOGUS**

v.

**AMERICAN SPEECH & HEARING
ASSOCIATION.**

**Civ. A. No. 74-849.**

United States District Court,
E. D. Pennsylvania.

Jan. 10, 1975.

Carl T. Bogus, Philadelphia, Pa., for plaintiff.

Michael M. Baylson, Philadelphia, Pa., Dorothy D. Sellers, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiff has filed this action under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 & 2) and federal and state common law against defendant, American Speech & Hearing Association (ASHA), a non-profit, non-stock, scientific, and professional organization, incorporated in Kansas. Defendant has moved to dismiss this action pursuant to

Fed.R.Civ.P. 12(b)(3) for improper venue and improper service or, alternatively, to transfer this action to the District of Columbia under 28 U.S.C. § 1404(a). We deny defendant's motions.

■ Venue and service in antitrust actions against corporate defendants are governed by Section 12 of the Clayton Act (15 U.S.C. § 22), as supplemented by 28 U.S.C. §§ 1391(c) and 1392(a) of the general venue statute. Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 291 F. Supp. 252, 255 (E.D.Pa.1968). Under Section 12 venue is appropriate in this District if defendant is an "inhabitant," is "found," or "transacts business" in this District.[1]

Defendant is not an "inhabitant" of this District because it is incorporated in Kansas and not in Pennsylvania. *See* Fox-Keller, Inc. v. Toyota Motor Sales, U.S.A., Inc., 338 F.Supp. 812, 814 (E. D.Pa.1972). Defendant is not "found" in this District because it does not have agents, officers, or employees who continually carry on local activities in this District. *See* 291 F.Supp. at 255. We conclude, however, for the reasons set forth below that defendant does transact business in this District.

There is little legislative history to guide us in determining the meaning of the term "transacts business" or the extent to which Section 12 was intended to broaden venue. Note, "Antitrust Venue: Transacting Business Under the Clayton Act," 55 Geo.L.J. 1066 (1966). In Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927), the Supreme Court stated that "a corporation is engaged in transacting business in a district . . . if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." In United States v. Scophony Corp. of America, 333 U.S. 795,

---

1. Section 12 of the Clayton Act provides: Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

807, 68 S.Ct. 855, 862, 92 L.Ed. 1091 (1948), the Supreme Court reaffirmed this interpretation of *Eastman Kodak*, stating that "the practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue."

This test mandates a case by case factual inquiry to determine whether, from a practical business standpoint, some amount of business continuity, more than a few isolated and peripheral contacts with this district exists. Eastern Pre-Cast Corporation v. Grant Portland Cement Company, 311 F.Supp. 896, 897 (E.D.Pa.1970). From an examination of the pleadings certain facts are clear. Defendant is a non-profit, non-stock, scientific, and professional organization, incorporated in Kansas, maintaining no office or employees in this District. Defendant's goals are to encourage basic research and scientific study of human communication and disorders, stimulate exchange of information about human communication through conventions, publications, and other continuing professional education activities, promote investigation of clinical procedures used in treating communication disorders, maintain high standards of clinical competence for professionals providing services to the public, and encourage the development of comprehensive clinical service programs. Defendant provides information and assistance to members, to state and federal government agencies, and to the general public in areas concerning the profession and its related activities. Defendant is the accrediting agent for college and university programs offering master's degrees in speech pathology and audiolo-

gy[2] and programs offering clinical services in speech pathology and audiology to the public. Defendant requires that all members subscribe to a code of ethics, and new members hold advance degrees or their equivalent in speech pathology, audiology, or speech and hearing science or a graduate degree in an allied discipline and have demonstrated an interest in communication disorders. Only members who have met requirements for the certificate of clinical competence may provide clinical services in speech pathology and audiology. By maintaining high standards for its certified members, accredited clinics, and accredited university graduate education programs, defendant attempts to protect the public. Defendant has a total of 18,621 members of which 393 reside in this District. Of a total of 925 academic and clinical service programs evaluated by defendant, 15 are in this District. Only a small percentage of conferences and workshops conducted by defendant have been held in this District.[3] Over the past four years less than $6000, representing approximately 3.13% of defendant's total advertising revenue, was received from this District. In the first quarter of 1974 approximately 8.47% of defendant's total advertising revenue was received from this District.

Defendant contends that only 1.4% of its current membership and .75% of its board and committee members reside in this District and that only one representative of any of its accreditation units has been in this District within the last four years. Plaintiff, using a different figure for the total number of ASHA members, argues that 2.23% of defendant's members reside in this Dis-

---

2. Defendant is recognized by both the National Commission on Accrediting and the Commissioner of the United States Office of Education as the accrediting agent for college and university programs offering master's degrees in speech pathology and audiology.

3. In the past four years approximately 120 State Conferences on Professional Affairs and 48 workshops on accreditation have been

conducted by defendant. None of the State Conferences on Professional Affairs were held in this District and 2 of the workshops on accreditation were held in this District. Between 1970–71 1 of approximately 8 workshops on Urban Language was held in this District and of 13 regional workshops on language disorders for pre-school education conducted during January through March of 1974 none have been held in this District.

trict, between 17,826.06 and 22,053.01 dollars were received from these members in 1973, and, while the exact number of visits by defendant's agents to this District is unknown, defendant's travel vouchers suggest 13 visits to this District over the past four years. Plaintiff further argues that the National Examination in Speech Pathology was offered 26 times within this District by the Educational Testing Service of Princeton under contract with defendant. Defendant contends there is no connection between defendant and the exam.

 Neither the low volume of activity conducted in this District as compared with defendant's total operation nor defendant's status as a non-profit, non-stock corporation, maintaining no office or employee in this District, is dispositive of the issue of whether defendant transacts business in this District. Levin v. Joint Commission on Accreditation of Hospitals, 122 U.S.App.D. C. 383, 354 F.2d 515, 517 (1965); School District of Philadelphia v. Harper and Row Publishers, Inc., 267 F. Supp. 1006, 1009 (E.D.Pa.1967). At the same time a professional association is not transacting business in a district merely because some of its members reside in the district. Wentling v. Popular Science Publishing Co., 176 F.Supp. 652 (M.D.Pa.1959). The standard of transacting business requires activity beyond membership and a few sporadic, peripheral, and isolated contacts with this District. We find this activity not so much in the revenue defendant received in advertising and membership fees from this District or in the number of times the National Examination in Speech Pathology was offered within this District, but rather in defendant's evaluating academic and clinical service programs in this District, certifying 393 members residing in this District, and

holding workshops on accreditation, Urban Language, and supervision in public schools in this District. The workshops, certification, and accreditation are the means by which defendant attempts to fulfill its goal of maintaining high standards for professionals providing speech and hearing services and are sufficient to meet the venue requirement that defendant "transacts business" in this District.[4]

 Contending that the District of Columbia is the more appropriate forum because it would be more convenient for the production of witnesses and documentary evidence, defendant has filed a motion to transfer pursuant to Section 1404(a), Title 28 U.S.C. Plaintiff argues that this is a case where the issues are primarily legal and few witnesses will be required at trial. In addition, plaintiff agrees to take any and all depositions of ASHA employees at their offices in Maryland and pay postage or transportation costs of any documents requested.

In considering whether or not factors exist warranting a transfer, we are vested with a wide discretion. Plum Tree, Inc. v. Stockment, 488 F.2d 754 (3 Cir. 1973). Our duty is to consider all relevant factors in a case to determine whether or not the moving party has established that, on balance, the trial would more conveniently proceed and the interests of justice be better served in the transferee court. Fitzgerald v. Central Gulf Steamship Corp., 292 F.Supp. 847 (E.D.Pa.1968).[5] While at this stage of the proceeding it is difficult for us to ascertain what documents and witnesses will be needed at trial, we agree with plaintiff's analysis that the issues in dispute are primarily legal, not factual, and witnesses will be few. We, therefore, find that defendant has not satisfied its burden.

---

4. Having determined that defendant transacts business in this District within the meaning of Section 12 of the Clayton Act, we need not discuss defendant's claim that because we do not have venue, the extraterritorial service on defendant was invalid.

5. The burden imposed upon the moving party is reduced where, as in the instant case, the cause of action states ground for recovery of a class. *See* Polin v. Conductron Corporation, 340 F.Supp. 602, 604 (E.D.Pa.1972).