**MISSOURI PACIFIC RAILROAD COMPANY**

**v.**

**The UNITED STATES.**

**No. 142–67.**

United States Court of Claims.
March 20, 1970.
As Amended March 25, 1970.

George K. Dunham, Washington, D. C., for plaintiff. Robert T. Molloy, Washington, D. C., attorney of record; Mark M. Hennelly, Gilbert P. Strelinger, St. Louis, Mo., Gerald J. O'Rourke, Jr., and Robert E. Simpson, Washington, D. C., of counsel.

Philip R. Miller, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant; E. Alan Moorhouse, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RESPECTING DEFENDANT'S OFFSET AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

SKELTON, Judge.

This is an income tax suit involving the proper method of computing income taxes and taking allowable deductions by a taxpayer under Section 1341 of the 1954 Internal Revenue Code (26 U.S.C. § 1341 (1964)). We have carefully considered the arguments of plaintiff, Missouri Pacific Railroad Company, and of defendant, United States, along with the facts and Section 1341 aforesaid, and have concluded that for reasons stated below, judgment should be rendered for the plaintiff on this issue.

Section 1341 provides as follows:

§ 1341. Computation of tax where taxpayer restores substantial amount held under claim of right.

(a) General rule.

If—

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000, then the tax imposed

by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

For purposes of paragraph (5) (B), the corresponding provisions of the Internal Revenue Code of 1939 shall be chapter 1 of such code. * * *.

The following facts are admitted and established:·

1. During the year 1958, plaintiff repaid to the United States Government certain amounts, representing freight and passenger rate overcharges, which plaintiff had reported as taxable income in the years 1942 through 1946 under a claim of right.

2. The repayments made by plaintiff in 1958 and attributable to overcharges during the years 1942 through 1946, were as follows:

| Year Amount Repaid was Reported as Taxable Income | Amount Repaid |
|---|---|
| 1942 | ($ 4,386.97) |
| 1943 | 36,376.90 |
| 1944 | 28,512.41 |
| 1945 | 487,214.64 |
| 1946 | 72,122.04 |
| Total 1958 Repayments | $619,839.02 |

3. Based upon such repayments and the application of Section 1341 thereto in determining the tax credit to be applied against its Federal income tax liability for the year 1958, plaintiff claimed a credit of $110,420.79 computed as follows:

| 1958 Repayments | Year Applicable | Tax Rates—% | Reduction of Tax on Repayments Reported As Income in Prior Years Under Section 1341 | Tax on Repayments if Taken as Deductions in 1958—52% | § 1341(a) (5) Tax Credit |
|---|---|---|---|---|---|
| $ (4,386.97) | 1942 | 40–42 | *$ (2,281.22) | $ (2,281.22) | ----------- |
| 36,376.90 | 1943 | 72 | 26,191.37 | 18,915.99 | $ 7,275.38 |
| 28,512.41 | 1944 | 72 | 20,528.93 | 14,826.45 | 5,702.48 |
| 487,214.64 | 1945 | 72 | 350,794.54 | 253,351.61 | 97,442.93 |
| 72,122.04 | 1946 | 38–40 | *37,503.46 | 37,503.46 | ----------- |
| $619,839.02 | | | $432,737.08 | $322,316.29 | $110,420.79 |

* Computed at 52% and treated as a deduction because tax rate in such prior years was less than the 1958 rate of 52% (See § 1341(a) (4)).

These repayments in the total sum of $619,839.02 represent the amounts the general Accounting Office (GAO) had determined the plaintiff, as a land grant carrier, had overcharged the government because of lading security restrictions for transportation services during World War II during the years 1942 through 1946. Pursuant to Section 321(a) of the Transportation Act of 1940 (54 Stat. 898,

49 U.S.C. § 65 (1940 ed.)), the government was entitled to special rates on shipments of troops and supplies. For security reasons during the war, it was impractical to determine the correct rates at the time the shipments were made. Consequently, the government paid the higher commercial rates with the understanding that as soon as the General Accounting Office could make an audit, the railroad involved would repay the amount of overcharges. Under this arrangement, as stated above, the plaintiff was required to repay the government $619,839.02 in 1958 for overcharges made during 1942 through 1946.

Upon making this repayment, the plaintiff was entitled to take income tax credits and make deductions with reference to its income taxes, because it had included these overcharges in its income under a claim of right in such prior years in the amounts, respectively, for such years as shown above, and had paid income taxes on such amounts during such years.

This brings us to the central problem in this case, namely, how and when is plaintiff entitled to compute its income taxes for the years 1942 through 1946 in view of its restoration to the government of the overcharges aggregating $619,-839.02 in 1958. Both parties agree that such computation is governed by Section 1341 of the Internal Revenue Code, but they are in complete disagreement on how to apply it. The principal reason for their difference of opinion in this regard is due to the fact that the tax rate applicable to the plaintiff varied considerably during the years involved. Naturally, the plaintiff wishes to apply the statute in the manner that will save it the most money, and, conversely, the defendant seeks its application in a way that will produce the most revenue for the government. In this connection, it should be noted that plaintiff's tax rate was 42 percent in 1942, 40 percent in 1946, 72 percent in 1943, 1944, and 1945, and 52 percent in 1958.

The plaintiff contends that Section 1341 should be applied separately to the 1958 repayments attributable to each of the years 1942 through 1946. It says that Section 1341(a) (5) should be applied to the 1958 repayments attributable to overcharges made in 1943, 1944, and 1945, the prior years in which the income tax rate (72 percent) was higher than the 52 percent rate in 1958, and Section 1341 (a) (4) should be applied to the 1958 repayments attributable to overcharges made in 1942 and 1946 when the income tax rate was lower than the 52 percent rate in 1958. In other words, where the tax rate for any of the prior years (1943, 1944, and 1945) to which one of the repayment items was attributable was greater (72 percent) than the tax rate (52 percent) in the year of restoration (1958) and the item involved more than $3,000, plaintiff computed its tax liability for the year of restoration (1958) without the deductions for such repayments and then reduced that tax liability by the amount of the tax which had been paid by reason of the inclusion of such items in gross income in the prior years (1943, 1944, and 1945). Where the tax rate in the prior years (1942 and 1946) was less than the (52 percent) rate in the year of restoration (1958), plaintiff took a deduction for such payments in the year of restoration (1958). By using this method of recomputing its taxes, plaintiff became entitled to a tax credit of $110,420.79.

The defendant says that plaintiff has used a "fragmentized" application of Section 1341 that is not permissible. It contends that the taxpayer is required to apply *either* subsection (a) (4) or (a) (5), but not both to the aggregate repayment made in each year. By this method, if current (1958) deduction of the entire repayment as a unit results in a lower tax, the entire repayment must be deducted; but if exclusion from prior years' income results in a lower tax, the entire repayment must be excluded. Accordingly, the application of subsection (a) (5) to the entire 1958 repayment results in a reduction of 1958 tax in the sum of $100,784.01, as compared to the $110,420.79 reduction reached by plain-

tiff by its application of both subsections (a) (4) and (a) (5) on a yearly basis. This would reduce plaintiff's tax credit otherwise due it by the sum of $9,636.78. The defendant also contends that the word "item" in the statute means the entire repayment made in 1958 must be treated as a unit or single item even though it consists of overpayments over a period of years. Thus, it argues, that treating the entire 1958 repayment as a subsection (a) (5) exclusion results in a greater reduction in the 1958 tax than does treating the 1958 repayment as a subsection (a) (4) deduction. It contends, therefore, that the taxpayer is required to use the subsection (a) (5) computation.

The plaintiff says that the 1958 repayment consisted of ten separate repayments aggregating $619,839.02 which were separate and distinct items and not a single item or unit. It contends that the term "item" in Section 1341 as applied to this case requires that the repayments be related to the prior years in which they were reported as income, and that no unitary or single item treatment is required or possible. It says that Sections 1341(a) (4) or 1341(a) (5) must be applied to each repayment item and each tax year separately in order to carry out the intent and purpose of the statute. It argues that the overcharge and later repayment for each of the prior years is the "item" referred to in the statute and must be considered separately on a year by year basis and not lumped together and considered as a unit or as one item. This is in accord with the statement of the Supreme Court in United States v. Skelly Oil Co., 394 U.S. 678, 683, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969), as follows:

> * * * The "item" referred to is first mentioned in § 1341(a) (1); *it is the item included in gross income in the year of receipt.* * * * [Emphasis supplied.]

Prior to the enactment of Section 1341, the Supreme Court held in the case of United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951), that the only relief available to a taxpayer who returned money upon which he had paid taxes in prior years, was to deduct the sum restored from his current income (year of restoration) in computing his taxable income. An examination of the legislative history of Section 1341 shows that it was enacted to provide tax relief to a taxpayer who might be disadvantaged because in the year of repayment or restoration, when he could take a deduction, he would be in a lower tax bracket than in the year or years in which he received the income. H.R.Rep. No. 1337, 83d Cong., 2d Sess., pp. 86–87, A.294–A295 (3 U.S.C. Cong. & Adm. News (1954) pp. 4017, 4113, 4436–4437) on the Internal Revenue Code of 1954 contains the following with reference to Section 1341:

D. Claim of right (sec. 1341)

> Under present law if a taxpayer is obliged to repay amounts which he had received in a prior year and included in income because it appeared that he had an unrestricted right to such amounts, he may take a deduction in the year of restitution. In many instances of this nature, the deduction allowable in the later year does not compensate the taxpayer adequately for the tax paid in the earlier year.

> The committee's bill provides that if the amount restored exceeds $3,000, the taxpayer may recompute the tax for the prior year, excluding from income the amount repaid. This is an alternative to taking the deduction in the year of restitution. The $3,000 limitation is imposed for administrative reasons. Moreover, with smaller amounts, excluding the repaid amount from the earlier year's income is likely to have little, if any, tax advantage over taking a deduction in the year of restitution. [3 U.S.C. Cong. & Adm. News (1954) at p. 4113.]

The House Report of the same session of Congress containing a detailed discussion of the technical provisions of the

Bill (Internal Revenue Code of 1954) provides as follows:

### Part V—Claim of Right

§ 1341. Computation of tax where taxpayer restores substantial amount held under claim of right

If the taxpayer included an item in gross income in one taxable year, and in a subsequent taxable year he becomes entitled to a deduction because the item or a portion thereof is no longer subject to his unrestricted use, and the amount of the deduction is in excess of $3,000, the tax for the subsequent year is reduced by either the tax attributable to the deduction or the decrease in the tax for the prior year attributable to the removal of the item, whichever is greater. Under the rule of the Lewis case (340 U.S. 590, 71 S.Ct. 522 (1951)), the taxpayer is entitled to a deduction only in the year of repayment.

*  *  *  *  *  *

Whenever the decrease in tax for the prior year is greater than the tax for the taxable year (without the deduction attributable to the item in question), the excess is treated as a payment of tax on the last day prescribed by law for payment for the taxable year and will be refunded or credited as an overpayment for that year. [3 U.S.C. Cong. & Adm. News (1954) at pp. 4436–4437.]

S. Rep. No. 1622, 83d Cong., 2d Sess., pp. 118, 451–452 (3 U.S.C. Cong. & Adm. News (1954) pp. 4621, 4751–4752, 5095–5096) states:

D.   Claim of Right (sec. 1341)

(1) House changes accepted by committee

Under present law if a taxpayer is obliged to repay amounts which he had received in a prior year and included in income because it appeared that he had an unrestricted right to such amounts, he may take a deduction in the year of restitution. In many instances of this nature, the deduction allowable in the later year does not compensate the taxpayer adequately for the tax paid in the earlier year.

The House and your committee's bill provide that if the amount restored exceeds $3,000, the taxpayer may recompute the tax for the prior year, excluding from income the amount repaid. This is an alternative to taking the deduction in the year of restitution. The $3,000 limitation is imposed for administrative reasons. Moreover, with amounts of $3,000 or under, the effect of excluding the repaid amount from the earlier year's income is likely to have little, if any, tax advantage over taking a deduction in the year of restitution. *  *  *  [3 U.S.C. Cong. & Adm. News (1954) at p. 4751.]

The Senate Report of the same session of Congress which contains the detailed discussion of the technical provisions of the Bill provides as follows:

### Part V—Claim of Right

§ 1341. Computation of tax where taxpayer restores substantial amount held under claim of right

Except for one revision this section corresponds to section 1341 of the House bill.

If the taxpayer included an item in gross income in one taxable year, and in a subsequent taxable year he becomes entitled to a deduction because the item or a portion thereof is no longer subject to his unrestricted use, and the amount of the deduction is in excess of $3,000, the tax for the subsequent year is reduced by either the tax attributable to the deduction or the decrease in the tax for the prior year attributable to the removal of the item, whichever is greater. Under the rule of the Lewis case (340 U.S. 590, 71 S.Ct. 522 (1951)), the taxpayer is entitled to a deduction only in the year of repayment.

*  *  *  *  *  *

Whenever the decrease in tax for the prior year is greater than the tax for

the taxable year (without the deduction attributable to the item in question), the excess is treated as a payment of tax on the last day prescribed by law for payment for the taxable year and will be refunded or credited as an overpayment for that year. [3 U.S.C. Cong. & Adm. News (1954) at pp. 5095–5096.]

S.Rep. No. 1983, 85th Cong., 2d Sess., (3 U.S.C. Cong., & Adm. News (1958) pp. 4791, 4871), in explaining the present law (Section 1341) states:

Section 64—Computation of tax where taxpayer restores substantial amount held under claim of right

Present law (in sec. 1341) deals with the situations where a taxpayer has included an amount in gross income in one year because it appeared that he had an unrestricted right to it, and in a subsequent year takes a deduction for the amount because it had subsequently become clear that he did not have an unrestricted right to the amount and restored it. In such a case the tax in the year in which the taxpayer must restore the amount is computed under present law in 1 of 2 ways: the tax in that year is to be computed by taking the deduction into account, or instead, by reducing the tax in that year by the amount of the decrease in tax which would have occurred in the prior year if the amount had not initially been included in gross income. [3 U.S.C. Cong. & Adm. News (1958) at p. 4871.]

█ We find nothing in this legislative history of Section 1341 that supports the arguments of the defendant. On the other hand, it is apparent from such history that Section 1341 was passed to give taxpayers relief that they did not have under prior law. See United States v. Skelly Oil Co., 394 U.S. 678, 681, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969). It is clear that Congress provided in this section that a taxpayer could take the deduction in the year of restitution by using subsection (a) (4) (the same as under the prior law), or he could recompute the tax for the prior year, excluding from income the amount repaid by using subsection (a) (5), whichever resulted in a lower tax. It will be noted that the House and Senate Reports quoted above always refer to recomputing the tax for the *prior year* by excluding from income in such *prior year* the amount repaid. They never refer to prior years (plural) in recomputing the tax. It it our view that Congress never intended to treat as a single item or unit the repayment of an overcharge that accrued during a period of several years, but on the other hand, intended that the overcharge for each year be treated as a separate item and that the recomputation of the taxes be made at the option of the taxpayer either in the year of restoration under subsection (a) (4) or for the prior year on a year to year basis under subsection (a) (5), whichever was to his advantage.

█ It is clear that Congress intended to give the taxpayer a choice of computing his taxes under the prior law or of doing so on a year by year basis for each of the prior years. Otherwise, there would have been no reason for the statute. The legislative history of the Act, as well as the statute itself, bear this out. There is nothing in Section 1341 that requires that a repayment of overcharges that accumulated during several prior years be lumped together and considered as a single item or unit. Rather, the Act indicates by its terms that the tax is to be recomputed either by taking the deduction in the year of restoration or by excluding from income the amount repaid for each of the prior years. While it is true the statute refers to "the taxable year" and also to "such prior taxable year (or years)," it is our view that the words "or years" were written into the statute to indicate that the same year by year computation would be made even if more than one year was involved, and that such words do not require all of the prior years to be lumped together and considered as one single item or unit.

██ We are also of the opinion that neither the Act nor its legislative history indicates that Congress intended that

the taxpayer must either deduct *all* of the overcharges in the year of repayment or exclude *all* of the overcharges from its income in prior years but that he could not do both as defendant contends. It is our view, as stated above, that the statute gives the taxpayer a choice of recomputing his taxes on a year by year basis. He can recompute the taxes for one prior year under subsection (a) (4) and use subsection (a) (5) for the recomputation of taxes for a different prior year, depending on which method is most advantageous to him taxwise for a given year. See United States v. Skelly Oil Co., *supra*, at 682, 89 S.Ct. 1379. This was the purpose of the law. There is no limit to the benefit to be derived from the application of the Act. All that is required is that the method of recomputing the taxes for a prior year that will produce the lesser tax liability for the current taxable year must be used.

■ Our interpretation of Section 1341 is consistent with our system of income taxation. Income is reported on an annual basis and taxes are paid accordingly. Each year is a separate taxable period. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365–366, 51 S.Ct. 150, 75 L.Ed. 383 (1931); United States v. Skelly Oil Co., *supra*, 394 U.S. at 681–684, 89 S.Ct. 1379. The argument of defendant that the several years involved here should be combined and the overcharges and repayments considered as a single item or unit would do violence to our system of annual accounting and payment of income taxes. Under such a theory, a taxpayer could make a profit in one year on which he would owe a tax, but if he could combine the income of that year with a loss in a succeeding year, he might not owe any tax at all on both years if they are considered together as a single taxable period. Congress never intended such a result.

The defendant cites the decision of the Supreme Court in United States v. Skelly Oil Co., *supra*, in support of its position in this case. We think its reliance on that decision is misplaced because it is clearly distinguishable on the facts. There the oil company received income for two years under a claim of right on which it paid income taxes during the years of receipt, less the 27½ percent depletion allowance to which it was entitled. In a subsequent year it was required by a court order to return this money to its customers. Consequently, by virtue of Section 1341 it became entitled to recompute its taxes for the year of restoration. It did so under subsection (a) (4) by deducting the entire amount from its income that year. The court held that it could not deduct the 27½ percent on which it had not paid taxes during the year of receipt because that would be equivalent to giving it a double deduction of 27½ percent. As is evident, the facts there were completely different to those in the instant case. For that reason, the decision in that case is not controlling in the case before us. As a matter of fact, except for the decision on the particular facts in that case, most of the opinion supports the position of the plaintiff in the case before us, as is evident by its frequent citation by us in this opinion.

■ Finally, defendant contends that collateral estoppel bars plaintiff's recovery in this case. It cites the unpublished memorandum opinion of the United States District Court of the Eastern District of Missouri in the case of Missouri Pacific R.R. v. United States, No. 65–C–40–(a) (E.D.Mo., Oct. 21, 1965). The parties there were the same as the parties in our case. The same contentions were made by the parties there as here. The court there ruled in favor of the government giving as its sole reasons for doing so the following:

\* \* \* The legislative history concerning the enactment of § 1341 makes it clear that Congress intended to provide a means by which the taxpayer could avoid the disadvantage suffered when the tax rate in the year of restoration was lower than the tax rate in the year (or years) to which the repayments relate. 3 U.S.Code Cong. and Admin. News 4436, 5095 (1954). This purpose is effectuated, and justice is

done to the language of § 1341, by following the construction urged by the government. Throughout the language of this section, the "item" referred to is that sum repaid in the current year which had been held under a claim of right and included in gross income in a "prior taxable year (or years)."

We do not think this decision bars plaintiff's recovery in the instant case under the doctrine of collateral estoppel for several reasons. The facts and circumstances in the two cases are different. The tax years involved there were 1955 and 1956, whereas we are concerned with 1958. The amounts of repayment items are not the same and the shipments out of which the items arose were different (different carrier arrangements, contracts, tariffs, and interline settlements). See Campana Corporation v. Harrison, 135 F.2d 334 (7th Cir. 1943), and Stoddard v. Commissioner of Internal Revenue, 141 F.2d 76, 80 (2d Cir. 1944).

Furthermore, we do not agree with the reasoning of the District Court that the purpose of the statute "is effectuated, and justice is done to the language of § 1341, by following the construction urged by the government." Neither do we agree with the holding that "the 'item' referred to [in Section 1341] is that sum repaid in the current year," for all the reasons set forth in this opinion. We decline to follow the decision in that case, and conclude that it does not bar plaintiff's claim here.

In the case before us, plaintiff claims a tax credit of $110,420.79 by reason of the recomputation of its taxes in the manner aforesaid. The defendant alleges an offset in the sum of $9,636.78 by reason of the recomputation of plaintiff's taxes according to defendant's formula described herein. Both parties have moved for a partial summary judgment on this issue because it is only a part of a larger suit by the plaintiff for a tax refund in the total sum of $1,373,107.39, together with interest thereon.

We hold that plaintiff correctly recomputed its taxes and that the defendant's formula for such recomputation is incorrect.

Plaintiff's motion for summary judgment on defendant's offset claim, in the sum of $9,636.78, is granted and defendant's cross-motion for partial summary judgment with respect to said offset claim is denied. Defendant's offset claim is dismissed.

DAVIS, Judge (dissenting):

There is a good deal to support taxpayer's side of this technical and troublesome question, but my conclusion is that on balance the Government is right. First, the wording of § 1341 comports better with that view. Under plaintiff's theory of "item", adopted by the court, the parenthetical phrase "year (or years)" has no function since it would be impossible for an "item" to be "included in gross income" for more than a single "prior taxable year"—one "item" could never straddle two or more years. The court's explanation—that "(or years)" was included to assure that a year by year computation would be followed even if more than one year was involved—saddles Congress, if that was its purpose, with the useless incongruity of drafting § 1341 in a way strikingly different from the mass of other provisions of the Internal Revenue Code which are, of course, also meant to be applied whenever applicable, i. e. to one year, two years, three years, etc.

Second, the concept of an "item" under § 1341 as covering all the money bundled into one claim giving rise to a single right-to-refund accords better with the Regulations implementing the statute. Section 1.1341(a) (3) of those Regulations says that, for the purpose of determining whether a deduction exceeds $3,000, there shall be added "the aggregate of all such deductions with respect to each item of income (described in Section 1341(a) (1)) *of the same class*" (emphasis added). In § 1.1341–1, under the heading "Determination of amount of deduction attributable to prior taxable years", one of the examples shows clearly the aggregation of similar items of

claim-of-right income (an employee's compensation) over three years. Plaintiff insists that these regulations are restricted exclusively to the calculation of the $3,000 minimum. Literally, that is their immediate purpose, but they affirmatively show, in addition, that the Treasury has officially read "item" in § 1341 quite differently from plaintiff. With the deference due Treasury Regulations, that is a factor in the defendant's favor here.

Third, the legislative history suggests that Congress's only concern was to make sure that all taxpayers would be able to compensate themselves adequately, on repayment of amounts received in earlier years, for the taxes paid at that time. To the extent possible, the wording of the section should be interpreted in that light. There is no intimation of a desire that, under the new section, taxpayers be in a position to maximize their tax benefits, far above recoupment of the prior tax detriment, by picking and choosing the existing remedy (§ 1341(a) (4)) or the new remedy (§ 1341(a) (5)) from

year to year. But that is what the court now allows plaintiff to do. This gives taxpayers more relief than Congress seems to have intended.

Finally, though United States v. Skelly Oil Co., 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969), treats with a different problem, its broad central theme is that under § 1341 the taxpayer should not always win and the Government always lose (394 U.S. at 686, 89 S.Ct. 1379). To permit recovery here appears to me to cut into that principle by allowing our taxpayer to derive a greater tax benefit from its repayment than it would have had if the amounts had (a) never been received in the first place, or (b) been fully deducted in the year of repayment. Put another way, taxpayer will now be better off than under either the rule of exclusion or the deduction rule of United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560 (1951).[1]

LARAMORE, Judge, joins in the foregoing dissenting opinion.

1. I agree with the court in rejecting the defense of collateral estoppel. See my opinion in Hercules Powder Co. v. United States, 167 Ct.Cl. 639, 647, 337 F.2d 643, 647 (1964).